UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DARWIN JOEL OSORIO RAMOS,

Petitioner,

v. Case No. 3:26-cv-2012-JEP-SJH

U.S. DEPARTMENT OF
HOMELAND SECURITY, et al.,

Respondents.
_________________________________/

# ORDER

Petitioner, a detainee of the United States Immigration and Customs Enforcement ("**ICE**"), filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2241 on August 5, 2026. (Doc. 1). He contends that he lawfully entered the United States and obtained deferred action status under the Deferred Action for Childhood Arrivals ("**DACA**"). (*Id.* at 2). According to Petitioner, he "has lived in the United States for approximately twenty-two (22) years," and he "has never been ordered removed" or "convicted of a crime that would justify prolonged mandatory detention." (*Id.*). He explains that while driving to work on July 8, 2026, law enforcement detained him, and ICE subsequently took him into custody. (*Id.*). Petitioner argues that his continued detention without adequate due process violates the Fifth Amendment and that he is eligible for less restrictive alternatives to detention based on, *inter*

*alia*, his DACA status. (*Id.* at 3–4). He asks the Court to order Respondents to provide him with a bond hearing or release him. (*Id.* at 5).

The Federal Respondents filed a response in opposition to the petition. (Doc. 6). Contrary to Petitioner's representations, the Federal Respondents explain that Petitioner is subject to a final order of removal that was entered in absentia in 2007. (*Id.* at 2; *see* Doc. 6-1 at 4). The Federal Respondents confirm that United States Citizenship and Immigration Services ("**USCIS**") granted Petitioner deferred action under DACA until October 3, 2026. (Doc. 6-1 at 10). The notice granting him deferred action provides: "Deferred action is an exercise of prosecutorial discretion by USCIS not to pursue the removal of an individual from the United States for a specific period. Deferred action does not confer or alter any immigration status." (*Id.*).

Insofar as Petitioner claims that he is entitled to a bond hearing, which this Court construes to be under 8 U.S.C. § 1226(a),[1] he is mistaken. Because he has a final order of removal, his detention is instead governed by 8 U.S.C. § 1231. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 544 (2021) ("Section 1226 applies before an alien proceeds through the removal proceedings and

[1] *See United States v. Ogiekpolor*, 122 F.4th 1296, 1304 (11th Cir. 2024) ("[Courts] liberally construe *pro se* filings." (emphasis in original)); *see also* 8 U.S.C. § 1226(a)(2)(A) ("[T]he Attorney General may release the alien on bond . . . with security approved by, and containing conditions prescribed by, the Attorney General . . . .").

obtains a decision; § 1231 applies [when the alien is ordered removed]."); *see also Deshati v. Noem*, No. 25-cv-15940-ESK, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025) ("The statute governing post-final order of removal immigration detention is 8 U.S.C. § 1231."). Thus, the statutory procedures outlined in § 1226(a) do not apply to Petitioner.

Based on the allegations in the petition, it appears that Petitioner did not know about his final order of removal in absentia. (*See* Doc. 1 at 2). He does, however, argue that he is entitled to release based, in part, on his deferred action status, (*see id.* at 4), and the Federal Respondents specifically address the petition as if Petitioner raised a claim challenging his detention based on his deferred action status, (*see* Doc. 6 at 5–7). Accordingly, this Court construes the petition to assert a claim challenging Petitioner's detention in light of his deferred action status.[2]

The granting of deferred action under DACA "is an exercise of the Secretary's broad authority to establish national immigration enforcement policies and priorities" and "is a form of enforcement discretion not to pursue the removal of certain aliens for a limited period . . . ." 8 C.F.R. § 236.21(c)(1). "The defining feature of deferred action is the decision to defer removal (and to notify the affected alien of that decision)." *Dep't of Homeland Sec. v. Regents of*

---

[2] *Ogiekpolor*, 122 F.4th at 1304 ("[Courts] liberally construe *pro se* filings." (emphasis in original)).

*the Univ. of Cal.*, 591 U.S. 1, 27 (2020). "Under the regulations, DACA recipients are treated as lawfully present for the period of the deferred action, though DACA 'does not confer any right or entitlement to remain in or reenter the United States' and 'does not preclude [the Department of Homeland Security ("**DHS**")] from commencing removal proceedings at any time,'" *Intriago-Sedgwick v. Noem*, No. 1:25-CV-01065-MIS-LF, 2025 WL 3688155, at *4 (D.N.M. Dec. 19, 2025) (quoting 8 C.F.R. § 236.21(c)(1)), nor does it "prohibit DHS or any other Federal agency from initiating any criminal or other enforcement action at any time," § 236.21(c)(1). Once granted, DACA status must be renewed every two years, but USCIS can terminate the approval at any time by providing the alien with "a Notice of Intent to Terminate and an opportunity to respond prior to terminating a grant of [DACA]." 8 C.F.R. § 236.23(a)(4), (d)(1). Moreover, "USCIS may terminate a grant of DACA *without* a Notice of Intent to Terminate and an opportunity to respond if the DACA recipient is convicted of a national security-related offense . . . ." § 236.23(d)(1) (emphasis added).[3]

[3] These offenses include "terrorist activity" as prescribed by 8 U.S.C. § 1182(a)(3)(B)(iii), "any alien who . . . engages in any activity to violate any law of the United States relating to espionage or sabotage or to violate or evade any law prohibiting the export from the United States of goods, technology, or sensitive information," 8 U.S.C. § 1227(a)(4)(A)(i), or "an egregious public safety offense." § 236.23(d)(1).

There is no indication in the record that Petitioner's DACA status has been terminated. (*See* Doc. 1 at 2–5; Doc. 6 at 2–6; Doc. 6-1 at 1–11). Thus, at this time, his "[d]eferred action status . . . amounts to, in practical application, a reprieve for [Petitioner]" such that "[n]o action (i.e., no deportation) will be taken" while he retains that status. *Georgia Latino All. for Hum. Rts. v. Governor of Georgia*, 691 F.3d 1250, 1258 n.2 (11th Cir. 2012) (quoting *Pasquini v. Morris,* 700 F.2d 658, 661 (11th Cir. 1983)); *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484 (1999) ("Approval of deferred action status means that . . . no action will . . . be taken to proceed against an apparently deportable alien, even on grounds normally regarded as aggravated." (citation omitted)).

The Federal Respondents argue that "[t]o the extent that the DACA benefit is construed to preclude Petitioner's removal, that is of no moment as to ICE's detention authority. It is ICE's position that the Petitioner's DACA status is nonetheless no impediment to detention." (Doc. 6 at 6). But "[w]hen the government detains a noncitizen pending immigration proceedings, it must have a legitimate, non-punitive reason for doing so." *Reales v. Dir. of Enf't & Removal Operations, Miami Field Off.*, No. 2:26-cv-425-KCD, 2026 WL 1090955, at *1 (M.D. Fla. Apr. 22, 2026) *(citing Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)). The Federal Respondents' briefing suggests that Petitioner is being detained to effectuate his removal—in fact, they present no other reason

justifying Petitioner's detention. (*See* Doc. 6 at 3–6). However, Petitioner's "unrevoked deferred action status legally forecloses that result." *Reales*, 2026 WL 1090955, at *2; *see generally Enriquez-Perdomo v. Newman*, 54 F.4th 855, 863 (6th Cir. 2022) (recognizing in a different context that a "removal order was not subject to execution because [the alien] had DACA status [when they were arrested and detained]"); *Mojica Morales v. Acting Sec'y, U.S. Dep't of Homeland Sec.*, No. 21-10835, 2022 WL 73761, at *1 (11th Cir. Jan. 7, 2022) (explaining that "DACA makes available 'deferred action'—a non-binding decision to forbear from seeking one's removal—to certain young people brought to this country as children").

Thus, ICE's position that Petitioner's DACA status is "no impediment to detention" is flawed, because the only apparent reason for Petitioner's detention is to execute his removal order—but that removal order cannot be executed while Petitioner retains his DACA status. As such, Petitioner's detention "serves no valid purpose." *Santiago v. Noem*, No. EP-25-CV-361-KC, 2025 WL 2792588, at *12 (W.D. Tex. Oct. 2, 2025) ("Where an individual is protected from removal through deferred action, their detention serves no valid purpose."); *Xajil v. Field Off. Dir. of Enf't & Removal Operations, Miami Field Off., Immigr. & Customs Enf't*, No. 2:26-cv-00945-KCD, 2026 WL 1413116, at *2 (M.D. Fla. May 20, 2026) (concluding that detention for the sole purpose of

effectuating removal of a person with "unrevoked deferred action status" is "arbitrary and . . . unlawful").

Accordingly, it is **ORDERED**:

1. Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2241 (Doc. 1) is **DENIED to the extent** he seeks relief under 8 U.S.C. § 1226(a) and **GRANTED** as to his claim that his current detention is unlawful based on his deferred action status.[4] Respondents shall release Petitioner **within 24 hours** of this Order and they shall provide Petitioner with access to a telephone to arrange transportation from the detention facility.

2. The Warden's motion to dismiss (Doc. 8) is **DENIED** for the same reasons stated in *Lanvin-Valdez v. U.S. Immigr. & Customs Enf't*, No. 3:26-CV-180-JEP-SJH, 2026 WL 1004569, at *2–3 (M.D. Fla. Apr. 14, 2026).

---

[4] To the extent Petitioner raises any other claims, the Court need not address them. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (declining to address an additional claim in a habeas petition after granting relief on another claim because "any relief [petitioner] could obtain on that claim would be cumulative"); *see also Garcia v. Guthrie*, No. 2:26-cv-791-KCD, 2026 WL 1139123, at *2 (M.D. Fla. Apr. 28, 2026) ("The remedy for such an unlawful detention is immediate release. And because that straightforward conclusion fully resolves the petition, the Court need not . . . reach [Petitioner's] other claims.").

3. The Clerk is **DIRECTED** to enter judgment granting in part and denying in part the petition, terminate any motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida on October 1, 2026.

JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

c:
pro se Petitioner
Counsel of Record